UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE LEONARD AND MADLYN ABRAMSON FAMILY CANCER RESEARCH INSTITUTE AT THE ABRAMSON CANCER CENTER OF THE UNIVERSITY OF PENNSYLVANIA, <br><br> Plaintiff, <br><br> v. <br><br> CRAIG THOMPSON, M.D., AGIOS PHARMACEUTICALS, INC., and CELGENE CORPORATION, <br><br> Defendants. | 11-cv-09108 (NRB) <br> ECF Case |

**REPLY MEMORANDUM OF LAW OF
DEFENDANT CRAIG THOMPSON, M.D. IN FURTHER SUPPORT OF HIS
MOTION TO DISMISS THE THIRD AMENDED COMPLAINT IN ITS ENTIRETY**

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Defendant
Craig Thompson, M.D.*

**TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................ 1

Statement of Facts .................................................................................................................. 2

Argument ................................................................................................................................ 5

I. THE COURT SHOULD DISMISS COUNT ONE OF THE AMENDED COMPLAINT (FOR DECLARATORY RELIEF) ...................................................................... 5

    A.      Count One Does Not State a Valid Claim for Relief ........................................... 5

    B.      Count One Does Not Allege a Justiciable Controversy ...................................... 6

    C.      The Institute Lacks Standing to Assert Count One .............................................. 7

    D.      Count One Cannot Be Adjudicated without Penn as Party .................................. 7

II. THE COURT SHOULD DISMISS COUNT TWO OF THE AMENDED COMPLAINT (FOR SPECIFIC PERFORMANCE) ......................................................... 8

III. THE COURT SHOULD DISMISS COUNT THREE OF THE AMENDED COMPLAINT (FOR FRAUDULENT MISREPRESENTATION) ................................. 9

IV. THE COURT SHOULD DISMISS COUNT FOUR OF THE AMENDED COMPLAINT (FOR BREACH OF FIDUCIARY DUTY) .............................................. 9

V. THE COURT SHOULD DISMISS COUNT FIVE OF THE AMENDED COMPLAINT (FOR BREACH OF CONTRACT) ...................................................... 10

Conclusion ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ala. State Fed'n of Labor* v. *McAdory,*
    325 U.S. 450 (1945) ........................................................................ 6

*Ashcroft* v. *Iqbal,*
    55 U.S. 662 (2009) ......................................................................... 5

*Barrett* v. *Freifeld,*
    908 N.Y.S.2d 736 (2nd Dep't 2010) ....................................... 9

*City of Harrisburg* v. *Bradford Trust Co.,*
    621 F. Supp. 463 (M.D. Pa. 1985) ......................................... 9

*Dougherty* v. *Town of North Hempstead Bd. Of Zoning Appeals,*
    282 F.3d 83 (2d Cir. 2002) ...................................................... 6

*Johnson* v. *Manhattan Ry. Co.,*
    289 U.S. 479 (1933) .................................................................. 8

*Lind* v. *Vanguard Offset Printers, Inc.,*
    857 F. Supp. 1060 (S.D.N.Y. 1994) .................................... 10

*MedImmune, Inc.* v. *Genentech, Inc.,*
    549 U.S. 118 (2007) .................................................................. 6

*Zdanok* v. *Glidden Co.,*
    327 F.2d 944 (2nd Cir. 1964) .................................................. 8

STATUTES

35 U.S.C.A. § 262 ............................................................................. 6

OTHER AUTHORITIES

Preamble and Rule 13 of the Southern District Rules for the Division of Business Among
    District Judges ........................................................................... 8

**<u>Preliminary Statement</u>**

The scattershot and disorganized assertions in the Institute's opposition papers provide no basis for sparing the Institute's Amended Complaint from dismissal.

Most critically, the Institute's papers merely confirm that the Institute has failed to plead any plausible claim of wrongdoing on the part of Dr. Thompson (or anyone else, for that matter). In particular, the papers confirm that the Amended Complaint bases its purported claims on two areas of Dr. Thompson's research at Penn (phenformin and autophagy).  Yet, as Dr. Thompson pointed out in his initial papers:  (a) there is no dispute that Dr. Thompson disclosed all of his discoveries relating to those matters to Penn and helped Penn apply for related patents, and (b) the Institute has never alleged, and cannot in good faith allege, that Agios is in fact currently pursuing any projects relating to those discoveries.

In response, the Institute points to certain documents (outside of its pleading) from November 2008 showing that Agios was then interested in pursuing phenformin and autophagy. That's not news.  As the Institute alleges, in 2008 Agios negotiated with Penn for licenses to Dr. Thompson's work in those areas, but the parties never reached agreement.  That does not, however, amount to a good-faith allegation that Agios is <u>currently</u> pursuing those areas – let alone pursuing them in violation of the Institute's rights.

Nor does the Institute successfully explain why the purported claims in the Amended Complaint, if they exist, belong to it, rather than to Penn.  The Institute's own papers, which finally attach the much-trumpeted Institute Agreement between Penn and the Institute, merely confirm  that the Institute's rights to any of Dr. Thompson's discoveries while at Penn are wholly derivative of Penn's rights.

The Institute also points to two "appointment" letters, claiming that this correspondence, read in conjunction with language in the Institute Agreement, evidences an employment relationship between Dr. Thompson and the Institute.  In fact, these documents merely confirm that Dr. Thompson's employment relationship was <u>with Penn</u>.  More to the point, even accepting the Institute's allegations as true, it is beyond dispute that:  (a) whatever his relationship with the Institute, Dr. Thompson was only obligated to disclose the results of his research to Penn's Center for Technology Transfer ("CTT"), and (b) he is not alleged to have breached that duty.

In sum, even accepting the allegations of the Amended Complaint as true, and even if those allegations are supplemented by the new facts contained in the Institute's papers, the Amended Complaint pleads no cognizable claim and should be dismissed in full.

## Statement of Facts

Based on the papers the parties have filed to date, for purposes of this motion, there appears to be no dispute that Dr. Thompson was a tenured Professor at Penn Medical School from 1998 until 2010, and, during that period, head of the Abramson Cancer Center at Penn's University Hospital.  He also held an appointment as Scientific Director of the Institute.  While at Penn, Dr. Thompson was subject to Penn's Policies and Procedures, pursuant to which Penn faculty disclose certain results of their research to Penn's CTT, so that Penn can pursue patents or other protections based upon such discoveries.

The Amended Complaint also alleges that, pursuant to its Institute Agreement with Penn, the Institute funded certain of Dr. Thompson's research at Penn and obtained certain rights to share in intellectual property that resulted from such research.  There is no dispute that Dr. Thompson was not a party to the Institute Agreement.

There is further no dispute that, while at Penn, Dr. Thompson made certain discoveries (as to phenformin, autophagy, ATP Citrate Lyase and glutaminolysis).  Yet, there is also no

dispute that he disclosed all of these discoveries to the CTT, and has worked (and continues to work) with the CTT to obtain patent protection as to this research.

Nor, finally, is there any dispute that, while at Penn, Dr. Thompson began a relationship with Agios, and that, in or about 2008, Agios attempted to obtain a license from Penn's CTT with respect to Dr. Thompson's work on phenformin and autophagy, but the parties were unable to agree upon any such license. Importantly, however, the Amended Complaint contains no allegation that Agios is in fact currently pursuing those areas.

In Dr. Thompson's view, these conceded facts preclude any claim here by the Institute, as they preclude any plausible allegation of wrongdoing on his part.

In its papers, the Institute nonetheless tries to salvage its pleading by pointing to certain documents attached to its papers, specifically: (a) language from an appendix to Penn's Policies and Procedures allegedly requiring that Penn faculty "ascertain and abide by the terms" of any of Penn's "sponsored research agreements" that apply to that faculty member's research, (b) language in the Institute Agreement noting that "Institute Investigators shall hold dual employment at both the University and the Institute," and certain "appointment" letters, one of which references Dr. Thompson's appointment as an "Ambramson Investigator," (c) documents between 2002 and 2005, in which Dr. Thompson explained that the Institute had "developed considerable intellectual property," and (d) Agios documents from 2008 indicating Agios's interest in phenformin and autophagy. Even if considered by the Court on this motion,[1] none of these documents changes any of the conceded facts set forth above, and hence none of them prevents the dismissal of the Amended Complaint. Nonetheless, to address them briefly:

---

[1]   Although the Penn Policies and Procedures and Institute Agreement are referenced in the Amended Complaint, the appointment letters and other documents the Institute attaches to its papers are not.

3

As to the appendix to Penn's Policies and Procedures (and putting aside whether the Institute Agreement even qualifies as a "sponsored research agreement"), it does nothing to alter the undisputed fact that Dr. Thompson is not, and has never been, a party to the Institute Agreement.  Nor does it alter the undisputed fact that, regardless of whether Dr. Thompson was a party to the Institute Agreement, Dr. Thompson was solely obligated under the Penn Policies and Procedures (if any disclosure obligation at all existed) to disclose his discoveries to Penn's CTT – and there is no allegation that he failed to do so.

As to the language in the Institute Agreement relating to "dual employment," that again is an agreement to which Dr. Thompson is not a party, and there is concededly no employment agreement between Dr. Thompson and the Institute.  Indeed, the "appointment letters" the Institute refers to make clear his appointment as Scientific Director of the Institute was merely part of Dr. Thompson's employment at Penn.  And, while the Institute also points to its own Form 990 for tax year 2008, in which the Institute lists Dr. Thompson in a table under "Officers [and] Key Employees," the same document reflects that the Institute, when asked how many employees it had, advised the IRS:  "None." (*See* Macdonald Decl., Ex. 2 at 1, 5.)  Finally, as discussed further below, even if Dr. Thompson were to be considered an employee of the Institute, the Institute has still failed to allege any plausible wrongdoing by Dr. Thompson in that role, particularly given that any disclosure obligation he had as to his discoveries was to Penn's CTT, not to the Institute.

Finally, the documents revealing that the Institute may have "developed considerable intellectual property" or that Agios was interested in phenformin and autophagy in 2008 simply add nothing to the inadequate allegations of the Amended Complaint.  The first statement does not even indicate what specific research Dr. Thompson is discussing, and the second merely

4

confirms what all parties have already agreed – that Agios was interested in and tried to obtain

licenses from Penn as to phenformin and autophagy.  This in no way overcomes the fact that the

Amended Complaint simply does not (and cannot in good faith) allege that Agios is currently

pursuing these subjects.[2]

Thus, the claims in Amended Complaint remain deficient and should be dismissed in full.

## Argument

### I.
### THE COURT SHOULD DISMISS COUNT ONE OF THE
### AMENDED COMPLAINT (FOR DECLARATORY RELIEF)

Nothing in the Institute's opposition papers successfully addresses any of the grounds we

have asserted for dismissal of the Institute's purported claim for declaratory relief as to the

parties' respective rights in unspecified intellectual property.

### A.    Count One Does Not State a Valid Claim for Relief

As we pointed out in our initial papers, the Institute has not alleged with any specificity

what research it is that Dr. Thompson either failed to disclose to Penn or is improperly allowing

Agios to pursue.  Thus, the Institute has failed to plead "more than the sheer possibility that a

defendant has acted unlawfully."  *Ashcroft* v. *Iqbal*, 55 U.S. 662, 678 (2009) (citing *Bell Atl.*

*Corp.* v. *Twombly*, 550 U.S. 544, 556 (2007).

In response, the Institute merely refers to documents – outside of the Amended

Complaint – that show that Agios was looking into phenformin and autophagy in 2008. (Pl.'s

Opp'n at 2, 16; Burger Aff., Ex. 7.)  As noted above, no one disputes this, or Agios's

---

[2]    Although not particularly relevant to the motion, the Institute (citing Dr. Thompson's 2008 disclosure report to Penn attached to Dr. Thompson's moving papers), claims Dr. Thompson failed to disclose to Penn his 1.5% equity interest in Agios.  The Institute's assertion is incorrect:  Dr. Thompson in fact specifically disclosed his 1.5% interest in Agios on the Penn disclosure form covering the period July 1, 2007 through June 30, 2008, which was meant to be read together with the report covering the January 1, 2008 - December 31, 2008 period. (Arffa Decl., Ex. 1 at Attachment B, Response 5.)

unsuccessful effort to negotiate possible license agreements with Penn for these matters. More to the point, the Institute does not, and cannot, allege that Agios is currently pursuing those subjects. Thus, the Institute has still failed to state a claim for relief.[3]

###   B.   Count One Does Not Allege a Justiciable Controversy

For the same reasons, there is still no "substantial controversy" here "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118, 127 (2007). As we noted in our initial papers, the Institute has never asked Dr. Thompson, Agios or Celgene not to use (or asked them to acknowledge the Institute's rights as to) any intellectual property allegedly belonging to the Institute, nor has any defendant refused such a request. (Opening Br. at 15.) In its papers, the Institute concedes this.

As a result, the Institute resorts to asking for discovery that *might* support its claim. But the Institute appears to be seeking discovery as to *Penn's lawsuit* – not this one. ("[D]iscovery is essential to determine the interests of the Institute in the research identified in…the Complaint filed by [Penn], in action number 12 CV 1330 (NRB)." (Pl.'s Opp'n at 20-21.) This ploy merely confirms the insufficiency of the Amended Complaint. The law is clear that a party may not use a declaratory judgment action as a fishing expedition. *See, e.g., Ala. State Fed'n of Labor* v. *McAdory,* 325 U.S. 450, 461 (1945); *Dougherty* v. *Town of North Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).

---

[3]   The Institute also complains that Agios's 2008 documents evince a plan to negotiate licenses with Penn, but not the Institute itself. To begin with, given that the Institute's rights are derivative of Penn's, Penn would be the proper party for Agios to deal with. Further, even if the Institute were a co-owner of the patents (and even if Agios were pursuing these subjects), any co-owner of a patent (here, Penn) would have the right to license the entirety of the patent. 35 U.S.C.A. § 262. While Penn might have an obligation to keep the Institute informed of its negotiations under the Institute Agreement, *see* Burger Aff., Ex. 6 at § 5.4, any breach of that duty would be a fight between the Institute and Penn, not between the Institute and Dr. Thompson or Agios.

### C.     The Institute Lacks Standing to Assert Count One

The Institute also fails to support its standing to bring this claim. (Opening Br. at 16-17.)

The Institute repeatedly points to the Institute Agreement as the supposed basis for its standing, yet the portions it quotes from the Agreement merely confirm that the Institute's rights to any intellectual property based on research it funds derive solely from Penn's rights.  Further, the Agreement states that all rights and responsibilities regarding "Institute Investigators" (a term that the Institute claims includes Dr. Thompson) will be administered by Penn, not the Institute, and that Penn and the Institute will be treated as independent parties without an agency or similar relationship.  (*See* Burger Aff., Ex. 6 at §§ 3.4, 12.5.)

The Institute also cites to certain "appointment letters" which – it says – shows that Thompson worked for the Institute.  They show no such thing.  To begin with, the earlier of these letters is from Penn and sets forth the terms of Dr. Thompson's employment at Penn. (Burger Aff., Ex. 5.)  The second letter, from the Institute, communicates only that as its Scientific Director, Dr. Thompson would receive funding and research support from the Institute. (Burger Aff., Ex. 4.)  Notably, this letter explicitly provides that all such support is contingent upon Dr. Thompson's continued employment at Penn.  Neither letter imposes on Dr. Thompson any obligation to the Institute; nor do the letters say anything that would make Dr. Thompson a party to the Institute Agreement or provide the Institute with any rights beyond those it may have under that Agreement.  In short, the letters simply have nothing to do with the Institute's standing to assert this claim.

### D.     Count One Cannot Be Adjudicated without Penn as Party

Nor has the Institute successfully explained how this claim can possibly continue without Penn, an indispensible party to it.  (Opening Br. at 17-19.)  The Institute offers two arguments, but neither has any basis in law.

First, the Institute says that Penn need not be a party because some of the Institute's Board Members are appointed to that Board by Penn.  The Institute and Penn are separate juridical entities, however, and the Institute Agreement provides that they are to act individually. The Institute cites no law suggesting that Penn is "present" here simply because Penn appointed some Institute Board members.

Second, the Institute states that Penn need not be a party to this action because it has filed a separate action in this Court, which has been designated a "related" case.  The law is clear that designation of two actions as related does not alter the parties' substantive rights.  *See* S.D.N.Y. Rules for Div. of Bus. Among Dist. Judges, Preamble & R. 13.  Indeed, even the further step of consolidation (which no party has yet sought) would not "merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."  *Johnson* v. *Manhattan Ry. Co.*, 289 U.S. 479, 496-497 (1933); *Zdanok* v. *Glidden Co.*, 327 F.2d 944, 950 (2nd Cir. 1964).  Accordingly, consolidating a second action with a first cannot cure the absence of an indispensable party in the first action.  The existence of Penn's own lawsuit simply does not make Penn a party to this one.

For all of these reasons, Count One of the Amended Complaint should be dismissed.

## II.
## THE COURT SHOULD DISMISS COUNT TWO OF THE AMENDED COMPLAINT (FOR SPECIFIC PERFORMANCE)

The Institute's claim for specific performance fails because the Institute has still not alleged any duty on Dr. Thompson's part to the Institute that he has failed to carry out.

As discussed above, the Institute's brief identifies no basis for any purported obligation on Dr. Thompson's part "to identify" to the Institute any "Tangible Research Property and Inventions funded in part or in whole by the Institute."  The documents on which it relies show, at most, that Dr. Thompson *may* have had some obligation to identify certain of his inventions to

Penn. And, it is undisputed that he disclosed to Penn's CTT the only inventions mentioned in the Amended Complaint.

Count Two should thus be dismissed.

### III.
### THE COURT SHOULD DISMISS COUNT THREE OF THE
### AMENDED COMPLAINT (FOR FRAUDULENT MISREPRESENTATION)

In our opening brief, we showed that the Institute's fraud claim fails because, among other things, the Institute has not identified any false statement or representation made by Dr. Thompson to the Institute. In response, the Institute asserts that Dr. Thompson failed to disclose his research topics to the Institute. But, under any law that might apply to this claim, an omission is not actionable as fraud without a special duty to disclose. *See, e.g., Barrett* v. *Freifeld*, 908 N.Y.S.2d 736, 737 (2nd Dep't 2010); *City of Harrisburg* v. *Bradford Trust Co.,* 621 F. Supp. 463, 473 (M.D. Pa. 1985). Here, the Institute has not adequately pleaded any basis for any duty on the part of Dr. Thompson to disclose anything to the Institute.

Nor has the Institute offered any explanation for its failure adequately to plead that it reasonably relied on any omission by Dr. Thompson, or that it was damaged in any way as a result.

For all of these reasons, Count Three should be dismissed.

### IV.
### THE COURT SHOULD DISMISS COUNT FOUR OF THE
### AMENDED COMPLAINT (FOR BREACH OF FIDUCIARY DUTY)

The Institute tries to save its fiduciary duty claim by arguing that Dr. Thompson owed it such a duty because of his employment relationship with the Institute and the funding he received from the Institute. (Pl.'s Opp'n at 27.) As we explained above, Dr. Thompson was not an Institute employee. Even if he were, that would not necessarily create a fiduciary duty. *See,*

*e.g.*, *Lind* v. *Vanguard Offset Printers, Inc.*, 857 F. Supp. 1060, 1067 (S.D.N.Y. 1994).  Nor does

the Institute cite any support for the notion that mere funding creates fiduciary duties.

But, in any event, the Institute has still not explained how such a duty (if it existed) was

breached.  The Institute argues only that "Thompson had a fiduciary duty to comply with the

provisions of the Institute Agreement,"  but has not explained how he was bound by that

Agreement, when he was not a party to it, nor how he violated it when it references Penn's

Policies and Procedures, which make clear a faculty member is to disclose discoveries (if at all)

only to the CTT, not the Institute.

For all of these reasons, Count Four fails.

## V.
## THE COURT SHOULD DISMISS COUNT FIVE OF THE
## AMENDED COMPLAINT (FOR BREACH OF CONTRACT)

Finally, the Institute still fails to identify an contract between it and Dr. Thompson.  He is

concededly not a party to the Institute Agreement, nor is the Institute a party to his employment

agreement with Penn.  To the extent the Institute is relying on its "appointment letter" to Dr.

Thompson, the letter does not appear to be a contract at all, and certainly sets forth no

obligations on Dr. Thompson's part.  And, even if it were a contract, the Institute fails to allege

any breach of it – or of the actual contracts the Institute mentions.  Nor does the Institute

properly allege any damages flowing from any such breach.

This claim should be dismissed as well.

## Conclusion

For all of the reasons set forth above and in his initial papers, Dr. Thompson respectfully

submits that the Court should dismiss the Amended Complaint in its entirety.

Dated: New York, New York
April 27, 2012

> PAUL, WEISS, RIFKIND, WHARTON &
> GARRISON LLP
>
>
> By: _____/s/ Allan J. Arffa___
>        Allan J. Arffa
>        aarffa@paulweiss.com
>        Eric Alan Stone
>        estone@paulweiss.com
> 1285 Avenue of the Americas
> New York, New York 10019-6064
> (212) 373-3000
>
>
> *Attorneys for Defendant*
> *Craig Thompson, M.D.*